Good morning. May it please the Court, Steve Brazelton on behalf of Petitioner Mr. Torres-Chavez. Your Honor, there's two issues before the Court in this case. The first issue is whether a respondent in immigration removal proceedings may move to withdraw admissions of alienage made by his counsel under circumstances indicating that the counsel overlooked a defense, and the second issue is whether a respondent in immigration removal proceedings may move  that the counsel overlooked a defense. May I stop you there and have some clarification maybe you can help me with. I recognize you were the counsel before. You sent your letter to the State of Nevada with respect to the alienage, and you said that the counsel overlooked a defense. Do you have a written conflict waiver with your client as his lawyer in this form? Well, the alien – sorry, the client did meet with the other attorney, reviewed the case, and expressed his intention to continue to retain myself. Do you have a written conflict waiver with your client? I spelled out in writing. I think he expressed orally. I spelled out in writing the conflict. So the answer is there's not a written consent from him? I don't believe there was a written consent other than for him to retain himself. Well, I'm just a little puzzled because it seems to me that you have a conflict of representing him now, claiming that you were the lawyer that may well have caused him the admission problem, and he may not be the most sophisticated client in the world, and you're still representing him. Well, if I were required to testify, I would have certainly withdrawn. If the government counsel or the immigration judge had objected to my continued representation, I would have withdrawn. If the client had expressed a desire to retain other counsel, I would have withdrawn. So don't we have to assume that your client doesn't believe that you were so egregiously bad that it violated the fundamental fairness of the proceeding? Because here you are still representing him. I think he certainly believes that I overlooked the defense that was available. Right. But that's not the issue, right? It's the Fifth Amendment, ineffective assistance of counsel. So the proceeding had to have been fundamentally unfair. You were so egregiously bad, you were worse than no lawyer at all. So it's hard to understand why he would continue to have you represent him. Either he doesn't believe that you were that bad, or, you know, this is just part of your strategy. So, in fact, you're pretty effective because you came up with a creative defense, and now you're moving forward on that. So how are we to take that? It's very – I've never had a situation where the lawyer on appeal was claiming that he was totally egregiously bad in the prior proceedings. Well, I think you have to understand the context of the lack of sophistication that you're dealing with with these clients. I don't think he thinks I'm a bad person or a dishonest person. I simply overlooked a defense which, under the standard matter of Velazquez, was not defrauding or anything like that. It was unreasonable professional judgment. And I think that in overlooking a defense, I was overlooked – I didn't exercise reasonable professional judgment overlooking that defense. Overall, he was content with my representation apart from overlooking that defense and was interested in moving forward with his case. Well, is there an admission of alienage that actually came out separate and apart from the point on which you're claiming ineffective assistance of counsel? Well, that admission never would have been made if the defense had been first identified. It would have been clear that the way to proceed would be to assert the Fifth Amendment right to silence and file a motion to suppress any evidence of alienage. And what the matter of Velazquez, which is the case relied upon by the immigration judge, set forth as a standard as unreasonable professional judgment that was not the result of a reasonable tactical decision. So that's sort of the Strickland standard, though, isn't it? Isn't that like a Sixth Amendment claim of a deficient performance as opposed to what we've termed Fifth Amendment violation? Because now we're not looking at the PIA has now changed its policy on a matter of compian. So we're really just talking about Ninth Circuit precedent for ineffective assistance. Well, ineffective assistance of counsel under the Fifth Amendment would be unreasonable professional conduct that results in prejudice to the defendant or to the alien. So how is there a fundamentally unfair proceeding, given that presumably his testimony under oath was true? So it's hard for me to see how that could make the proceeding fundamentally unfair. Well, if the results would have been so different had reasonable professional judgment been employed, I would argue that that renders the proceedings fundamentally unfair. I mean, would you be able to show that that wasn't his alienage? In other words, I'm having trouble. I mean, I realize it's one thing to sort of not say and then put the government to the test or whatever, but put to the test, it would come out the same, wouldn't it? The result would have been different if the motion had been filed without an omission first. I mean, that's the second issue for the court to decide. Right. Would it have been different? And was he protected when he went in 2003 to follow up to make a follow-up inquiry? Was that inquiry protected vis-à-vis the confidentiality provisions of the MSA? Let's go to that. You know, kind of the bottom line question, if we kind of sort through all of this, is if that question of alienage is related to his 245 application. So he goes in and he says, I need to know my work card is. Can somebody check on it, in effect? That's where we end up. And maybe you can help me relate that statement to somehow. Again, you have The question of alienage, because he seems to want to know, you know, I'm in this limbo. What's my work card situation, which doesn't seem to have anything to do with alienage? Well, when someone has an appeal pending of a denied amnesty case, they're given work cards once a year. And he had been given work cards initially. And so he was hoping he could get another one, thinking he still had an appeal pending. This is 13 years later? Admittedly, it's a long time. However, those amnesty appeals were pending for that long. It would not be unusual for an appeal to be pending that long. And again, you have to look at the sophistication of the client. He didn't express it in the most eloquent fashion, didn't say, I'm here to follow up on my amnesty application. He simply said, where's my work card? And the only reason he would have had a work card was because he didn't have an amnesty appeal pending. I'll reserve my two minutes. I have 15 seconds left on reserve. Thank you. I guess the moral of the story is don't run the risk of checking in with the IRS. I think that is the advice that's usually given to aliens, just to keep a low profile with regard to DHS. Good morning, Your Honor. My name is Carol Federighi. I represent the government, the respondent in this matter. There were two grounds on which the immigration judge found that Mr. Torres was an alien and was subject to removal. First, Mr. Torres' attorney freely admitted in the proceedings before the immigration judge that he was an alien and conceded that he was removable. The immigration judge reasonably found that he was removable based on these concessions. Let me ask you about the ineffective assistance of counsel claim. Maybe you could explain now with the matter of Compion, how does that affect our analysis of this claim? My assumption is we're still looking at Ninth Circuit case law on it, regardless of how the attorney general has changed his position, but maybe you could address that. Well, as I said in my 28-J letter, our position is that there's no Fifth Amendment right to the effective assistance of counsel in immigration proceedings, and that applies to the current case as well as to all forward-going cases. Therefore, this case is What does in apply going back? No, that's always been our position, that there's no Fifth Amendment right to the effective I understand that's always been your position, but it hasn't worked. You know, that's not been the law in the Ninth Circuit. So I thought Compion is a going forward proposition. In terms of the procedural and substantive standards that they set out there for asserting what's being called now a deficient performance of counsel claim, that those requirements only apply to forward-going cases and wouldn't apply to this case. So this Court's case law in terms of how to assert an effective and what they call an ineffective assistance of counsel claim would apply. We would still argue, though, that there's no due process right to the effective assistance of counsel here, that his claims don't rise to the level of asserting a due process violation, and that's because there's no government involvement in what went on here. The government gave him a fundamentally fair hearing. When he first appeared before the immigration judge, his counsel recognized that he had had a legalization application pending and asked for more time to investigate the situation. He was granted more time to investigate his client's case. They then appeared four months later, and they didn't ask for more time at that stage. Counsel then freely went ahead and admitted the alienage and conceded removability. There's no indication that he needed more time to investigate the case or that he was having any problems with the case. The government, therefore, accorded him what he needed in terms of a fundamentally fair hearing, the additional time that he needed to investigate the case. There's no indication that, you know, then there was apparently some internal change in strategy, but that's not something that can be attributed to the government in terms of being a due process clause violation. It's something that solely occurred between the client and his attorney. And therefore, I think at most we could say perhaps there's a – it was up to the discretion of the immigration judge whether to withdraw the concessions given the information presented to him at that stage. And he did not abuse his discretion in determining not to allow the withdrawal of the concessions. You're saying there was a fundamentally fair hearing. I don't understand this issue about whether there was government involvement. I mean, we have cases where the petitioner relied on a notario or relied on an attorney who then did not come to court or give him bad advice or whatever, and we've held that that person was deprived of their Fifth Amendment right to effective assistance of counsel. And that didn't relate to government involvement. Well, and in terms of that Ninth Circuit precedent that you cite, there is no – this doesn't rise to the level of what this Court has found to be an ineffective assistance of counsel claim. And that's because there's nothing – there really is insufficient evidence here in the record to determine whether what happened was due to some kind of ineffective assistance by Mr. Braselton or just miscommunication between the client and the attorney. What happened was at the time that he conceded that Mr. Torres was removable, that did seem like a reasonable tactical decision at the time, because he was going to – he said, I'm going to pursue cancellation of removal on behalf of my client. And that's the routine, that aliens concede removability and then proceed to focus on their relief from removal. So that was a routine tactical decision, and it seemed reasonable at the time. Now, what happened is somehow three months later, Petitioner's counsel, Mr. Braselton, files this motion to withdraw the concession. So something happened in the interim. And we just don't know exactly what it is. Mr. Braselton says, well, I overlooked – I forgot to tell Mr. Torres that he could contest his removability. And once I told him about that, he said he wanted to contest his removability. But that explanation is sort of bare bones. It kind of begs the question of what kind of advice and information was being exchanged here between the two parties. Because an attorney doesn't just give the client options, like you have options A, B, and C, and then sits down and lets the client choose the option. The attorney advises him about which options are more likely to succeed. So something happened between September and December to, one, bring it to Mr. Braselton's attention that he had forgotten to tell his client that he could contest removability, but also that that was the better strategy to pursue as opposed to cancellation of removal. So something happened in there to change his view of the entire case. And we don't know whether that was Mr. Braselton's fault, for example, by failing to investigate thoroughly or to do his legal to realize that the best route was to contest removability, that the cancellation of removal route was going nowhere. Is there other evidence of the record beyond that admission regarding alienage? Well, there was. That's getting to the second ground for finding him removable, and that's the information he provided to DHS at the Reno office when he went to inquire about his work card, if that's what Your Honor is talking about. Right. That is in the record, and that is, that was information that was proper for the government to use in this case to establish this alienage, which is the main part of the government's case here. The petitioner has argued that that information was furnished pursuant to a legalization application and therefore was protected by the confidentiality provision of that act. But, however, the sequence of events sort of it had been over eight years since this legalization application had been denied. During that time period, he never sought to appeal it. He never sought to find out the status of the application. There's no indication he was actively pursuing the application. I even thought the application was still being actively under consideration. But whether he acknowledged it or not, the result would have been the same. Ultimately I'm not an immigration maven, but if he did not fess up to this, what would have happened? I guess it would have gone forward and his alienage status would have been established in any event, I imagine. That is correct. Without taking aside the concessions, the record is sufficient to meet the government's burden to show alienage in this case. So we can put that you can decide it on the second issue alone without reaching the first issue. Didn't the I.J. expressly did not make an adverse credibility determination? The I.J. then went on and said it was incredulous, I think was the word he used, or incredible, that Mr. Torres-Chavez would have done this inquiry that many years afterwards. What are we to make of that? Because if the I.J. if we take the I.J. at his word that he was not making adverse credibility determination, don't we have to take Torres-Chavez's statements at face value? I think you can take them at face value without necessarily believing that they lead to the conclusions that he's arguing about here. First if you look at what he actually said when he came into the DHS office, he said where's my work card, I want to find out about my work card. He never mentioned a legalization application or any indication that he thought that that was still pending at the time. Although, as his counsel points out, he wouldn't have had the work card independent of having these other proceedings. So they were kind of all bound up with each other. That may be true. We don't actually know what his status was during the interim. The last status he had, the card in the record shows that that expired in 1990. So since then, there's no indication of any status he had since then. So we don't know if he had work authorization through another means during that period, if he thought he could get work authorization that some other people had told him, go to INS, they'll give you work authorization because for some other reason. So there really is little indication as to his thinking process during that period. So the immigration judge just found it objectively unreasonable to think that a subsequent inquiry eight years after the fact, after the last action taken on the legalization application, that such an inquiry was pursuant to the application, especially where the alien never mentioned the application when he came to the DHS office. He told basically at that point the application was a dead letter and to allow an alien to resurrect that any time subsequently years down the line they come to DHS with an inquiry would basically extend the scope of the confidentiality provision way beyond its original purpose. And I just want to point out in closing, the original purpose was to protect aliens when they submitted their application from feeling that the INS would go after them. In this case, DHS did not go after Mr. Torres. The information he provided voluntarily at the Reno visit was properly considered by the immigration judge and therefore the decision should be upheld. Thank you. Your Honor, first of all, there certainly is a due process right under the Fifth Amendment to counsel as set forth by the Ninth Circuit. The Attorney General's attempt to undo the Ninth Circuit case law would violate the separation of powers.  There is no reasonable tactical decision that has been identified as the reason for admitting alienage. The intended application for cancellation of removal was not mutually exclusive from first filing a motion to suppress the evidence of alienage. But isn't it common to admit alienage in these proceedings? I mean, this is not the first time that has happened. It is common unless you have a defense. Well, I guess I don't know. Why would somebody admit alienage? Because immigration presents this form in I-213, which is part of the record, and it's established without doubt at that point. But I don't understand. What flows from that? I mean, there are certain advantages to admitting alienage and not testing it, I take it. In the context of this case, there was no advantage. When would there be an advantage? In the case of the matter of Velazquez, if you needed to file a motion to change venue, oftentimes the courts will require that you not contest alienage because they don't want to transfer the case to another court. Is there a time that alienage would be appropriate to acknowledge with alienage? Is that what you're saying? Well, generally, unless you have a defense, you wouldn't contest it. Was there a defense? I mean, is there any defense suggested in the record that we could look to? The defense at issue in this case is a motion to suppress the evidence and terminate proceedings. Right. But is the defense to the fact that the alienage is incorrect? The alienage is not incorrect, but it could have been suppressed and the proceedings terminated. Who has the burden to prove alienage? The government. And then once the government sets forth a prima facie case of alienage, the burden shifts. Right. But I don't understand if you don't admit alienage and they've got an A file and other documentation, why they wouldn't then have a prima facie case and you'd be right back where you started. Well, in this case, the only evidence that would have been available to the government would have been part of the amnesty application file. And this form, which was compiled when he went into the office, and they opened up his amnesty application file. I guess what I'm puzzled by is why an experienced attorney like you in this area would acknowledge alienage. I guess I just don't understand why you would do that. Why we don't deny it in every case? Why do you do it? I mean, you know the law. You just explained it to me. You said you're more knowledgeable about it than I am. Why did you admit it? In general, there's no chance of prevailing on that issue because your client has been interviewed, they've prepared this form, and it's been established by case law that this form is adequate to establish alienage. So it would be just a waste of time, essentially, a waste of the court's time. Just a waste of time.  Thank you. Thank you, Your Honor. The case just argued, Torres-Chavez v. Holder is submitted.
judges: McKeown, Ikuta, Block